UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHRISTOPHER F. KEMLAGE,

                    Plaintiff,

-against-

PETER DeFOREST, individually,
MICHAEL BILLENS, individually, and
the TOWN OF UNION VALE, New York,

                    Defendants.

------------------------------------------------------------x

**07 CIV. 6366**

**ORIGINAL**

07 Civ. (    )   **WP4**

**COMPLAINT**

**Jury Trial Demanded**

      Plaintiff CHRISTOPHER F. KEMLAGE, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from the Defendants' jointly engaged in conduct under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed him by the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

3. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

4. Plaintiff CHRISTOPHER F. KEMLAGE is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was employed by the Defendant Town in its Highway Department.

5. Defendant PETER DeFOREST (hereinafter "DeForest"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected Superintendent of Highways for the Defendant Town. As such he has plenary, unilateral and final decision making authority with respect to the operation of that Department. DeForest's wife, the Town Clerk of the Defendant Town, *de facto* runs the day-to-day administration of the municipality.

6. Defendant MICHAEL BILLENS (hereinafter "Billens"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the Defendant Town in its Highway Department. Effective on or about November 2, 2006, DeForest advised Plaintiff that henceforth (and with respect to union related matters as set forth *infra*) Billens was his (DeForest's) spokesperson.

7. Defendant TOWN OF UNION VALE, New York (hereinafter "Town") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

8. In mid 2006 Plaintiff repeatedly and non-disruptively expressed to DeForest his concerns that members of the Highway Department were routinely put at risk by reason

of the complete absence of mandatory safety equipment, including *inter alia* safety goggles for eye protection, noise suppressors for ear/hearing protection, and chaps to prevent bodily injury in the event a chain saw made contact with a worker's lower body. DeForest refused to take remedial action, advising Plaintiff (in reference to the obsolete and/or defective equipment that had for years been made available to workers): "This is what Union Vale provides".

9. Because of Plaintiff's expressed concerns regarding the health and safety of Department employees, DeForest's refusal to take remedial action with respect to these concerns, and DeForest's refusal and/or failure to equitably divide amongst Department staff overtime assignments, Plaintiff determined that in order to best protect and advocate on behalf of his co-workers unionization was required.

10. Under the circumstances Plaintiff openly engaged in organizational and recruitment efforts with the objective of having Local 456 of the International Brotherhood of Teamsters certified as the collective bargaining agent for subordinate employees in the Highway Department.

11. As a result on September 27, 2006, DeForest summoned Plaintiff to his office and advised him that:

> a. His union related advocacy had created a "rift" in the Highway Department,
>
> b. Unionization was not "working out", and *inter alia*,
>
> c. Plaintiff would have to "find another job".

12. In response to Plaintiff's immediate protest that "we have the right, under law, to organize", DeForest informed him:

3

      i) It "wasn't working out",

      ii) Plaintiff was a "trouble maker and I [DeForest] can't have a trouble maker here",

      iii) Plaintiff should have consulted with him [DeForest] before engaging in union organizational activities, and,

      iv) "I can't have a union here".

In that connection DeForest further advised Plaintiff that: because of his union activities he was going to lose his job, that his union related activities had divided the Highway Department staff, and because of those activities Plaintiff "can get out now".

    13. On October 10, 2006, following DeForest's appointment of Billens as his "spokesperson" with respect to Plaintiff's union organizational activities, DeForest advised Plaintiff that he had to "appease" Billens and another employee (Brian Butts) in order to continue being employed by the Town. Thereafter and on November 2, 2006, DeForest summoned Plaintiff amongst others to his office where Billens berated him, threatened to fire him, and threatened to "dog [him] till [he] drops".

    14. Thereafter and on a regular basis during October and November of 2006 DeForest repeatedly advised Plaintiff that he "did not have much time left there" and that he [Plaintiff] was "out the door" because his union related activities made him a "trouble maker" and a "Nigger". Intermittently during that time period DeForest repeatedly fired Plaintiff and then reinstated him.

    15. On October 24, 2006, following a meeting among Highway Department staff and representatives of PESH at which Plaintiff requested that first aid kits and CPR instruction be given to Department staff, Billens advised that he (Plaintiff) would not

need either because he [Billens] intended to: "Stomp on [his] chest and bleed [him] out". During that same interaction Billens advised Plaintiff and another co-worker who had advocated unionization (Edward Adams) that he [Billens] and DeForest had decided to prevent Plaintiff and Adams from working together and intended to separately "work [them] like dogs until [they] drop". Billens ended the interchange by adding: "Why don't you guys just quit and get the hell out".

16. On or about December 15, 2006, the Town Board recognized Local 456, I.B.T. as the sole and exclusive bargaining agent for all employees (including Plaintiff) holding the title of Motor Equipment Operator and Motor Equipment Operator/Mechanic in the Highway Department.

17. Also on that date the Union appointed Plaintiff as Shop Steward for the newly formed collective bargaining unit. With regard to that appointment DeForest expressly refused to accept Plaintiff as the Union's representative and advised Plaintiff: "This is not a Union shop and I will do what I want".

18. During the following months DeForest took retaliatory action against Plaintiff by reason of his union organizational activities and advocacy activities as Shop Steward including:

>    a. Denying him overtime duty assignments in connection with, *inter alia*, snow plowing operations,
>
>    b. Singling him out for assignment to especially labor intensive work assignments,
>
>    c. Denying him bereavement pay,
>
>    d. Eliminating so-called "call-out" time, which previously had resulted in

    additional compensation,

e. Eliminating a so-called "garbage detail" that previously had resulted in overtime compensation,

f. Denying him the safety benefit of flagmen while Plaintiff performed work on publicly roadways, and *inter alia*,

g. Assigning him to work with Billens who, with DeForest's authorization and approval sought to coerce Plaintiff's resignation by humiliating him, degrading him, and threatening him with violent physical injury.

DeForest did not take any similar action (as set forth *supra* in sub-paragraphs "a", "b", "c", "f", and "g") against those members of the Highway Department who were not actively involved in efforts to unionize.

    19. In that connection and on April 3, 2007, DeForest ordered Plaintiff to perform a work detail with Billens during which Billens, acting as DeForest's "spokesperson" with respect to Plaintiff's unionization activities:

a. Initially refused to speak with Plaintiff,

b. Refused to permit Plaintiff to take any breaks,

c. Repeatedly and in an extremely threatening manner, stated that he was considering "smack[ing Plaintiff] in the face", while evidencing rage, anger and eagerness to engage in violent conduct,

d. Refused to drive Plaintiff from their work location to the Highway Department in order to use the bathroom, advising: "Too fuckin' bad, you're not going anywhere", "You're staying here [inside a Highway Department truck being operated by Billens], until Pete tells me to

    take you back",

    e. Shut off both the engine of the truck and the truck's radio which Plaintiff asked to use to call DeForest for help, instructing Plaintiff: "Fuck you, you're staying here"

    f. Refused Plaintiff's request to drive himself to the Highway Department to use the facilities, advising: "Tough shit, you're staying here, Fuck you, you're staying here",

    g. Removed the ignition key from the truck, picked up a shovel and walked away from the vehicle - - conduct that permitted Plaintiff to exit the truck, walk approximately two miles towards the Highway Department until his cell phone could be used to call for help - - in response to which the Supervisor of the Town, Lizette Hitsman [who told Plaintiff that he was not a Shop Steward ("No, you're not, you're nothing") and with respect to Plaintiff's earlier expressed concerns regarding DeForest and Billens' anti-union related retaliation had informed him: "What do you expect when you go union")] picked Plaintiff up by car and transported him back to the Department.

20. By reason of Billens repeated threats of physical violence, his repeated orders to the effect that Plaintiff was "staying right here" inside the truck, that he was forbidden to return to the Highway Department, and *inter alia* his shutting off the truck's ignition:

    a. Plaintiff was involuntarily forced by Billens to remain confined within the truck for a substantial period of time in fear for his life, and thus protested to Billens that he was "uncomfortable" being held in the truck

and that he [Billens] was "holding me [Plaintiff] against my [Plaintiff's] will",

b. Plaintiff was aware of and did not consent to that confinement,

c. Billens had no legal authority to so confine Plaintiff, and that confinement was not otherwise privileged or permissible.

21. Thereafter following Plaintiff's report of his false imprisonment by Billens to DeForest, DeForest condoned and/or ratified Billens conduct and instructed Plaintiff that he was required to continue working with Billens despite his physically threatening conduct or:

a. "Quit or just leave if [you're] unable to get along with Mike",

b. "You have to go",

c. "Punch out and get out", and,

d. "I'm tired of you and your Union, you'll be on the outside looking in. It's going to happen soon".

22. As a proximate result of Defendants' conduct Plaintiff has been: chilled in the exercise of his First Amendment protected rights; punished financially for exercising those rights; physically threatened and placed in fear for his personal safety; falsely imprisoned; repeatedly fired and then reinstated; publicly humiliated; publicly embarrassed; publicly degraded; shamed; rendered anxious; caused emotional upset; and otherwise has been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

23. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "22", inclusive.

24. Under the premises Defendants' conduct violated Plaintiff's right of association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

25. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "22", inclusive.

26. Under the premises Defendants' retaliatory conduct violated Plaintiff's right of free speech as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

27. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "22", inclusive.

28. Under the premises Defendants' conduct has chilled Plaintiff in the prospective exercise of his rights to free speech and association as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM

29. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "22", inclusive.

30. Under the premises Defendants' conduct denied Plaintiff the right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FIFTH CLAIM

31. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "19", "20", and "21", inclusive.

32. Under the premises Defendants' conduct violated Plaintiff's right to be free from unreasonable seizures as guaranteed him by reason of the Fourth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

a. Awarding as against all Defendants such compensatory damages as the jury may determine,

b. Awarding as against the individually named Defendants such punitive damages as the jury may impose,

c. Awarding as against all Defendants reasonable attorney's fees and costs, and,

d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
July 11, 2007

LOVETT & GOULD, LLP
By: _____
　　　　Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
914-428-8401